No. 26,056.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, *Appellee,* v. SUE V. HEMPHILL et al., *Appellants.*

SYLLABUS BY THE COURT.

1. SCHOOLS—*Transfer of Territory.* Territory may be transferred from a rural high-school district to a community high-school district.

2. SAME—*Transfer of Territory—Form of Notice.* A transfer of territory from a rural high-school district to a community high-school district considered, and held not to be invalidated on account of the form of the initial notice.

3. SAME—*Transfer of Territory—Official Misconduct—Evidence.* The proceedings considered, and *held,* charges of collusion and bad faith in official conduct in making a transfer of territory from one high-school district to another were not sustained by the evidence.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed July 11, 1925. Reversed.

*Josiah D. Williams,* county attorney, *William M. Beall, W. T. Roche,* both of Clay Center, and *Silas Porter,* of Topeka, for the appellants.

*Charles B. Griffith,* attorney-general, *R. P. Evans* and *George Clammer,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin the county superintendent from carrying out her malicious determination to cripple the Wakefield rural high-school district by detaching therefrom certain territory and attaching it to the Clay county community high-school district. An injunction was granted, and the county superintendent, together with others joined as defendants, appeal. The present county superintendent is the successor of the county superintendent whose conduct occasioned the litigation. In what follows, the present officer's predecessor will be referred to as the county superintendent.

---

1. Schools, 35 Cyc. p. 834.  2. Id., 35 Cyc. p. 838.  3. Id., 35 Cyc. p. 836.

Forty-four owners of land in the north and the west portions of the rural district petitioned the county superintendent to transfer their real estate to the community district, which maintains a high school at Clay Center. The county superintendent gave the initial notice required by law, and on the date specified in the notice transferred the real estate as prayed for and gave the notice of alteration in boundary. The rural district and certain individuals whose real estate was not transferred appealed to the board of county commissioners. After a hearing the county board sustained the action of the county superintendent.

Plaintiff contends the initial notice was defective in that it did not state the destination of the territory which the petitioners desired should be transferred from the rural district. The petitioners were advised by the notice that their petition to attach their land to the community district would be acted on. Others were advised of what was important to them, namely, that territory would be detached from the rural district. Therefore the notice gave fair information to all concerned of what was to be considered. Besides that, the rural district, by its officers and others, appealed to the board of county commissioners, so that the interests adverse to the transfer of territory have in fact utilized what the notice was designed to secure—opportunity to be heard.

The statute under which the rural district exists contains the following provision for reducing its area:

"The county superintendents of public instruction shall have authority to transfer territory from any rural high-school district to any adjoining rural high-school district or to any school district in which a four-year accredited high-school is maintained. . . ." (R. S. 72-3509.)

The district court held that the community district is not a corporate entity in the true sense of the term, and consequently is not a "district" within the meaning of the statute. The community district is such an entity in the school system of the state that it has boundaries, has a governing body, owns school property, may levy taxes for the support of a high school, does in fact maintain an accredited high school with a four-year's course, and is frequently called by the statute creating it a "community high-school district." (R. S. 72-2501-2505.) Being fully equipped to subserve all the purposes to be accomplished by a transfer of territory from one district to another, refinement on the precise nature of the organization need not be indulged.

The State, *ex rel.*, v. Hemphill.

As indicated, the petition charged that the county superintendent entertained a malicious design to disable the rural district. .It was alleged that the petition for transfer of territory was presented to her to effectuate her malicious plan to defeat the objects for which the rural district was created, and that the board of county commissioners acted in collusion with her. The proof of these charges consisted in the following: Tracts comparatively near to and remote from the rural district schoolhouse were transferred; some community tracts were surrounded by rural territory, and some rural tracts were surrounded by community territory; the county superintendent made the statement that she would let out anyone who wanted out, and one of the county commissioners testified the board's purpose in deciding the appeal to it was to sustain the county superintendent. This evidence did not sustain the issue tendered by the state. A large number of landowners joined in a petition to be transferred. The application was regularly granted. As between the county superintendent and the rural district, the county board felt the county superintendent should be supported. There was neither malice nor collusion, and after the transfer of territory the rural district remained almost four times the minimum size necessary for a rural district.

The district court found that the best interests of the school districts of Clay county were not served. Whether the county superintendent's action accorded with the court's notion of school interests was not material. The only question was, Did she act in bad faith, or so reckless of consequences that her conduct virtually exceeded her authority? It was her duty to make the transfer if the interests of the inhabitants of the rural district required it. The statute makes her the judge of those interests, and acting in good faith, she had authority to do what she did. Her apparent belief that landowners dissatisfied with their school facilities should be permitted to resort to other available facilities was not unreasonable, and dour purpose to grant petitions for transfer, if ever such petitions should be presented, until the rural district could not function, was not indicated by the statement attributed to her.

The judgment of the district court is reversed, and the cause is · remanded with direction to deny the injunction.